The next case on our calendar for argument. Perry et al. City of New York et al. The first issue in this case is whether the FLSA requires an employer to ferret out sporadic, unreported overtime that employees elect not to claim through a readily accessible system. As four other circuits and numerous district courts in this circuit have held, it does not. This court should join those circuits and hold that if an employer establishes a reasonable process for employees to report uncompensated work time, the employer is not liable for non-payment if the employee fails to follow that established process. This case amply demonstrates the justifications for that rule. As the city was held liable for millions of dollars in overtime, it had no way of knowing about- Isn't there evidence in the record that the jury could credit that employees were told that this kind of overtime is not compensable or that this kind of activity is not compensable work? There's insufficient evidence in the record to support that conclusion. The plaintiffs can point to testimony from one witness who said there was an understanding, he didn't identify from where that understanding came, that he wasn't allowed to request overtime for these activities. And he testified that he was never told- You cross-examined him, so presumably you found out where it came from. We did cross-examine him and he admitted that he was never told not to submit requests for overtime. And so in that instance, where he's not told not to submit requests for overtime, that's insufficient as a matter of law to overcome this defense and support liability under the FOSA, under those cases, which this court should follow. If you could help me out, Counselor, one of the things that I found so challenging is that you were contesting liability, which basically sounds like you want the whole trial to happen again. And we weren't there. Like, there were witnesses that were, you know, the jury heard something. So I'm hoping that you can narrow your conversation with us as to what are those things by which it was unreasonable for a jury, as a matter of what we can review and what we can do, which evidence was not sufficient. Yes. So the evidence that was not sufficient, and this is just to the first point on pre-shift liability, was that if you adopt the holdings of those cases and hold that where there is an available system that employees can use to request overtime, and they did in this case. They requested 10 times. Right. So I've read all those cases. And one of the things that I am wondering is do any of them- Which one do you think best stands for the proposition that it's actually a bright-line rule? You're asking us to do a per se rule that if they have some sort of reporting system, then it doesn't matter, no matter what else is happening, they've got immunity here. And the way that I read most of the- one case was a little close. But most of the other cases, it was just a factor that they considered when they were evaluating everything. And this was something that was a fact for one side and something else was a fact for other. Well, I think- I'm sorry. So the pointed question is which of the cases that you cited you think stands for the best shot we have of saying per se, always rule, that when they have some sort of reporting system, doesn't matter what the rest of the facts are, there's no liability? Yeah. Two responses to that. I think White is the best case for that, Your Honor. It was decided on summary judgment, so the court decided as a matter of law that the defense removed- made it so that the defendants could not be liable. And even in the dissent in that case acknowledged the general principle. She just contested the application of the facts to that general principle. So I would say since that case was a matter of law on summary judgment, that's our best case. And also, we're not claiming that there are no circumstances. If there is sufficient proof that an employer has actual knowledge or if there is sufficient proof that the employer was ordered- the employee was ordered not to use that available overtime system, even if there is an available system, those could be ways for a plaintiff to overcome the defense. Those facts weren't established here at trial. And I think as a matter of law, we're entitled to non-liability on the pre-shift claims for that reason. I thought- I thought you conceded a few minutes ago that there was testimony that people were told that this is not- this is not compensable work. There was- there was ambiguous testimony. I think that was insufficient as a matter of law. Well, the other thing is city time has a drop-down menu. So if you want to charge overtime, you check this, that, and the other thing. But this kind of activity is not listed there after true. It says other. But that would seem to suggest that this is not a contemplated ground for seeking overtime. I think the evidence actually supports that it was a contemplated grounds for seeking overtime even though it was other. The lead plaintiff testified that he requested this type of overtime dating back to 2012. He testified that he told his colleagues that they should be requesting this type of overtime. It was routinely approved. Ninety-eight percent of the overtime requests were approved for an amount more than 10x the amount of unclaimed overtime here. So I think the evidence shows that, you know, despite the fact that it was not maybe exactly geared towards the specific tasks, it was still a readily available system for which they could and did, you know, throughout the litigation period, throughout the whole history they're claiming damages for, used to request overtime. And what are we to make of the, I guess, the 2008 draft memorandum about overtime getting approved for overtime and the fact that as early as, I think it's 2008, correct? Yeah, it was drafted initially in 2008. It was issued in 2014. And it's just a reminder if you look at it, it says specifically that it's reminding people, reminding supervisors to make sure that these tasks didn't need to be done and shouldn't be done off shift. But if they were done off shift, to make sure that people were requesting the overtime to which they were entitled. So if anything, it goes to the facts. Does that speak against the idea of there not being actual or at least constructive knowledge, just the fact that they had to issue it? I don't think it does, Your Honor, because it shows basically it's just a proactive reminder of the policies to make sure that people were requesting overtime. You know, they knew that. Okay, maybe I should ask the question differently. What do we do if we believe that maybe a jury thought that the existence of that suggested that there was actual constructive knowledge? I think if it's sufficient, if the jury could have reasoned that there was actual knowledge, I think perhaps that would be enough to support the jury's findings. But again, they made no similarly situated finding on knowledge. They weren't actually allowed to prove that representatively. And you have to look to what was presented at trial. And, you know, the testimony was at best sort of ambiguous about actual knowledge. But doesn't our case law allow constructive knowledge? I mean, I understand that you're suggesting we should follow this. What you're characterizing is a rule that some of these other circuits have, but isn't it under our law, isn't constructive knowledge sufficient? Constructive knowledge is sufficient as a general principle, Your Honor. But here, one, I think if you adopt the rule that we're asking for, constructive knowledge would go out of the case. But two, even if you take constructive knowledge, I think the evidence here was insufficient as a matter of law to prove constructive knowledge. If you look at the testimony of the witnesses, many of them, you know, didn't testify that, of the 13 out of 2,500 plus witnesses that testified, many of them didn't testify that anyone had knowledge that they were working pre-shift. They maybe said hi to their attendant. Some of them testified that they went and got changed first. So I think as a matter of law, even if you don't adopt the rule that the other circuits have adopted, the evidence was still insufficient. If I could just, I know my time is up, but if I could briefly turn to the other two points. Can I ask a question about the de minimis? Can you talk about your de minimis justification? Sure. I think that is probably the clearest of our arguments because the court took it out of the case on summary judgment without really any analysis. And even the plaintiffs can really cite to no cases that take de minimis as a defense out on summary judgment. The evidence, you know, there were facts either way. I think the jury should have been allowed to hear whether this equipment exchange was de minimis. The plaintiff's best evidence is that it took maybe five minutes on average. There are cases that say 10 minutes daily is sufficient to support a de minimis defense. I'm sorry. Can you point to the evidence that you think was not credited in the weighing of the summary judgment, right? Because presumably you wanted it, they didn't, so ties go to you. So why don't you lay out what you think is the best evidence that was in front of the court that should have defeated summary judgment? Sure. There was evidence from the depositions that this task was sometimes done on shift, sometimes done off shift. When it was done off shift, it took maybe two minutes sometimes, up to five minutes. The plaintiff's best evidence said it was up to five minutes. So I think even crediting their best evidence, it still is an issue that should have gone to the jury. But 15 minutes is not de minimis. And under the contract, you use slivers and you round up and you round down. So every time, every instance here, every claim is 15 minutes, correct? Correct, Your Honors. But it could, Your Honor, but it could, basically if there was a de minimis task at the end of a task that took you from say six minutes. Well, if you have several de minimis acts, you aggregate them. It seems to me that because of the contract, if somebody arrives and begins doing a thing that lasts two minutes, then under the standard rule, you owe the whole 15 minutes. Just to clarify, the de minimis instruction is only to the post-shift work. And I would respond also to say that Singh says that de minimis activities don't trigger the continuous workday rule. So if there are multiple de minimis activities, that's still not necessarily enough to support the finding. That's correct, yes. But at worst, we might lose. But it's definitely a question that should have gone to the jury. There was sufficient evidence going both ways. So the continuous workplace rule does not apply afterward, granted. Correct. But the rounding up and down is still something that is provided in the union contract. The Department of Labor says that that's a permissible way of calculating things for the Fair Labor Standards Act. And we're not disagreeing with that at all, Your Honor. It's just a matter of whether— Well, then we talked about 15 minutes, and I don't see where 15 minutes— It's a matter of whether a de minimis task could have taken them over the threshold for rounding up or rounding down. So if they were working seven minutes, that would get rounded down. If they had an additional de minimis task of two minutes, that would put them to nine minutes, and it would get rounded up. And it makes a significant difference to the potential damages. And you also had evidence that some people got out of shift exactly on time. Correct, correct. So it wasn't—and that goes to one of the other factors, which is whether or not it was a routine daily occurrence. And it's, again, something that—you know, this is a very fact-bound case. It's four factors, none of which are dispositive. And it's something that the jury should have been allowed to weigh as the finder of fact, rather than being taken out in a footnote and summary judgment with no analysis. And you said earlier, I think, that many people did put in hundreds, maybe thousands, of instances in which people claimed overtime for just this kind of pre-shift and post-shift activity, and the city paid. Correct. So isn't then that $7.2 million exactly what you contend you would have paid if it had been requested on a timely basis? It's possible if those requests were all legitimate and approved, it would be. And at an absolute minimum, however, we wouldn't have been subject to the additional doubling of the penalty for willfulness. I didn't ask that. I understand. That's a separate thing. That doubles it. But let's just look at the $7.2 million. I mean, we're not going to sit here and go over each entry. But there was an expert, and I believe that at the end, you stipulated, or the city stipulated with your adversaries, that that's the measure of the damages. And it just seems to me that that is what, having stipulated to that, you've stipulated that that is what you would have paid if people had timely asked for it. I think the response to that is that the cases indicate that if there is an overtime system and employees elect not to use it, that's a complete defense to liability. So regardless of the fact that... No, I understand that. But my question was different. And it said if they had, you would have paid it. Assuming that they were legitimate and supported overtime requests, I think that... If you lost. Correct. Which, frankly, you did. I know I'm well over. I can discuss the verdict sheet issue, or I can save that for rebuttal. Does the... I'm sorry, but does the argument on city time and the ability of people to make these claims, if they had the ability to make the claims and they didn't, does that have any impact on the willfulness finding? I believe it does, Your Honor, because it shows that the city was not willfully violating the FLSA because it provided for the system that allowed the employees to make these claims. They did not use it. But it shows that far from attempting to violate the FLSA and underpay people, it was actually trying to provide every avenue for people to request the time for which they were entitled. So at a bare minimum, I think the willfulness finding has to be vacated on that basis. Did you make this argument in the district court? Yes. All right. Thank you. Thank you. Good morning, Ms. Baumann. Yes. Whenever you're ready. Great. Thank you, and may it please the court. Much like the city ignored the 30 million minutes of unpaid work performed by these first responders, the city now wants you to ignore the evidence heard during the three-week trial and to ignore the jury's verdict that not only did the city violate the FLSA, but that its violations were willful. And to do that, they want you to ignore this court's longstanding precedent. As Your Honors mentioned previously, this court has a rule in place for when an employer has a timekeeping system. And this rule was reiterated in 2011 in the Kugel decision. There, there was a timekeeping system that the plaintiff could use to request overtime. And the district court wanted to hold that plaintiff to a higher standard when he didn't. But this court disagreed and found that because it is the employer's duty to maintain accurate records of work, once the employer knows or has reason to know that work is being done, it cannot deny compensation. And here, the city of New York knew that the work was being done, and they knew that the plaintiffs could not request overtime. And when claims were made, they paid them. There is no evidence in the record that the city brought to trial that when claims for the type of overtime at issue in this case were made, that they were paid. Indeed, the one, what the city refers to as the one witness who testified about the ability to not, that they didn't have the ability to request overtime, but the city fails to notify the court is that that was a deputy chief. A deputy chief who is in charge of captains, lieutenants, paramedics, and EMTs, stood in front of the jury and confirmed and admitted that any sort of pre-shift equipment readying and checking was simply not requestable as overtime. Not requestable. In addition, a city's lieutenant, who again is in charge of the paramedics and in charge of the EMTs, he testified before the jury that as a lieutenant, based on his experience, you are not permitted to put in overtime requests for checking PPE and tech bags prior to the start of the shift. And even with respect to the post-shift work, the evidence that the city hangs its hat on here is evidence from one plaintiff who submitted, in the record, there are five overtime requests for narcotics transfers prior to the time the city instituted policy, finally giving them the ability to request this overtime, and that was in 2016. They introduced five of those, and not one overtime request for the pre-shift time at issue here. Let me ask you this. I mean, the jury did not make a finding that city time documented, that city time's documentation of pre-shift time should all be considered work time. I'm sorry. The jury did have the opportunity and did answer those questions. Well, that's not the question they were asked. In fact, the jury was confused, which is actually quite understandable, because there's a fundamental mix-up here all the way through as to whether the work is compensable, which nobody asks, and whether the time is compensable. Because when you round up and when you round down, there's a confusion there. And I think that the jury was asking whether all of the pre-shift time should be considered work time, which was not asked, and the city asked for it, but you opposed it, or whether the pre-shift work time in question actually is captured in city time, which suggests that all of it is captured by checking in and checking out. But that doesn't say how much of that time is compensable. If I may, Your Honor, the jury actually did have the ability to grapple with those questions. So there were two distinct sets of questions aimed at damages, and one was whether the city time system accurately captured the minutes at issue here. Those were questions three and four on the verdict form. And then the jury was given specific instructions as to what tasks constitute compensable work, and they were also given specific instructions on the continuous work day. In other words, at what point do the plaintiffs' day begin, and at what point do they end? And listening to the instructions from the judge and evidence elicited at trial, the jury found that the city time system did accurately capture the work time for which the plaintiffs were to be paid. But if they had decided no, they had the ability to say no there. You're saying they found that, but that's not what they were asked. The jury was all mixed up by this rounding up and rounding down. That's why they asked that question. And you're saying that they found that that all was compensable work. What they found was that the pre-shift work in question was accurately captured in city time. But they did that in conjunction with the court's instructions, which specifically told the jury about work time, what constitutes work time under the FLSA for which the plaintiff should be paid. It instructed the jury as to what activities wouldn't constitute work time. And so thinking about all of those instructions combined with the evidence, the jury did find that the city time system, which the city has set up to round, does accurately capture that time. And if they decided it didn't, if they decided there was too much time that was not work time, they could say no to that question and the plaintiffs would still prevail because they would move on to questions five and six, which asked the jury to identify the average amount of time per plaintiff, per shift, that they engaged in pre-shift work that was compensable under the FLSA. That naturally would have been speculation. It would not have been speculation, respectively, Your Honor, because there was testimony from the plaintiffs. Like seven people out of 1,300 or something. There were more than seven people. There were, I believe, 14 plaintiffs testified about the amount of time that they spent performing pre- and post-shift tasks. I mean, obviously the plaintiffs' counsel selected who testifies. They were quite fundamental. They were selected half and half. You aren't going to pick people who said, well, I just arrived with my bagel and coffee. I always do that. Of the testifying plaintiffs, some of them were also selected by the city. And this was done through a stipulation that the parties had had, whereas 5% of the plaintiffs were designated as discovery plaintiffs, and then each side, the city and the plaintiffs, got to select their trial witnesses. And the city actually had more witnesses ready to call and decided not to do that. And that is on the record because the overwhelming evidence at the trial demonstrated that from the moment these plaintiffs scanned in, they were engaged in work, work that the city itself admits is compensable. Could you speak to this question of the failure to, or I should say, the court instructing on the de minimis standard with regard to the, I guess, post-shift work for the EMTs? It seems, well, at first I'd ask whether or not it was error in the summary judgment ruling, but I guess more specifically, was it error here for the court to take that out of the jury's consideration? The short answer to both of those is no, but I'd like to back up even a little bit further to just reiterate the point that this issue, the court's decision on summary judgment, is not properly before this court. It was the city who raised the issue of whether or not the de minimis defense applies, and the court denied that. And then there was a trial on the merits, and there was ample testimony at the trial about this equipment exchange, how long it took, what was involved, who was involved, the fact that it took place, for the most part, in front of a lieutenant, and whether or not it was recorded, and it was, and how regularly it occurred. Right, but the fact that there's evidence and testimony to arguably support that doesn't solve the problem, if it is a problem, that they weren't permitted to make, the jury wasn't permitted to consider part of this de minimis. So I understand you to be saying, like, well, it really was, there was evidence to support that it was not, I'm sorry, that it was not de minimis. Well, the jury didn't get to consider that with regard to that, because the judge instructed them, like, this particular task is not de minimis. Well, but under the continuous workday doctrine, this exchange activity took place prior to their last compensable work activity of the day. So under that doctrine, whether or not the jury would have decided that the exact same exchange that the city now admits is not de minimis for paramedics is de minimis for EMTs, there was still testimony that there was additional compensable work that was done after that exchange, and that includes an information exchange that the city's witnesses admitted occurred between EMTs and paramedics, as well as includes storing equipment, such as the EMT's technician's bag, the EMT's personally issued medical equipment, their stethoscope. But why, I understand your argument in terms of the evidence to support that this was not de minimis, but I guess I'm just questioning, was it appropriate that the jury didn't get to consider everything, basically, that this slice of this was pulled out by the judge, saying, well, look, you can't find that this task is de minimis? It was appropriate, and the court should look at this. So what Judge Broderick decided to do is to follow his own law of the case here. And on appeal, what the city is limited to arguing is that there was an abuse of discretion in his following the law of the case. And in order to find an abuse of discretion, certain factors have to be found. And here, what Judge Broderick did in ruling on the city's post-trial motion on this very matter, talking about the trial evidence, found that there was insufficient evidence to cause him to reweigh his previous summary judgment decision. And the point I was trying to make earlier, it may not have been clear on, even if he had, it would be legally irrelevant. There would be no error because the EMTs engaged in additional compensable work, work that the city admits is compensable, after they engaged in that exchange. And thus, under the continuous workday doctrine, that time gets included as time. Well, is it so clear that this task was always done at the same, that the equipment exchange always happened at a particular time? I mean, you're saying that they did additional work after that. I mean, does the evidence clearly indicate, oh, that this is happening at one specific time, and that after the equipment exchange, they're doing X, Y, and Z? I mean, I don't. Yes. So there was testimony, and the city admits that this exchange cannot happen until the outgoing shift's tour has ended. And the only opportunities that there is to happen before that, and these are the two or three examples that the city picks out, is when that ambulance, and an ambulance has two EMTs on it, it's required to have two EMTs. If one of those EMTs is working an overtime shift, they only work six hours, so they bring the ambulance back beforehand. And that is the only time that that equipment can be exchanged or stored before that shift's time has ended. And the lieutenants would know when that happens because, again, it happens in front of them. These are the same lieutenants who look at the city time system that you mentioned earlier and can see the exact time that the EMTs shift ended and the exact time that they clocked out. Are you relying on the continuous workplace doctrine for the post-shift period? Because your adversary says you can't, and I think he's right. The continuous workplace doctrine does not apply after a shift. I don't believe that is true under this court's precedent. No, we can check, yeah. What has been found in Singh, which perhaps is maybe what you are referring to, Your Honor, is that one element of work that occurs, and we have to remember in Singh, the element of work was actually pre-shift, and it was picking up of a briefcase at an individual's home, which could have happened hours before they actually got to work. Here, there is no legal support that where post-shift work, where five different tasks all happen at the same time at the same place, which is what happened here. The EMTs and paramedics ended their shift and then engaged in a series of required post-shift work, not preliminary or post-preliminary work, but actual required EMT and paramedic work. So is that your argument with respect to de minimis work, that if you have three de minimis activities going on, you amalgamate them and they are no longer de minimis? You look at them in the aggregate, especially here where they are all performed at the exact same time. And the reason you do that is to avoid some absurdities that would happen, like let's take a hypothetical. An employer requires 20 different tasks after the end of the shift, each of which takes three minutes. That's an hour of post-shift work. But if you slice and dice it into 20 separate tasks, you would never be entitled to pay for that time. And that's what the city wants you to do here. It wants you to slice and dice four or five post-shift tasks. But when you say that, say hypothetically, three two-minute tasks are performed simultaneously, doesn't that still amount to two minutes? There is no evidence that they were only three one-minute tasks that were performed simultaneously. No, but you said the tasks were performed simultaneously. Oh, not at the exact same location is what I meant. So these are all occurring at the station consecutively. That's what I thought it should be saying. Yes, and my apologies for the misstatement. But what I meant to be saying is that the EMTs spend time engaging in this post-shift equipment exchange, the same post-shift equipment exchange that the paramedics participate in. They then engage in an information exchange. They then have to put away their PPE on specified PPE racks. They then have to store their technician's bag in a specified city locker, or in a different rack from the PPE. And they then have to store their personally issued medical equipment. And all of those tasks happen after the exchange. Can I ask, if we disagree with you, and if we are of the view that summary judgment was improperly granted on the de minimis issue, what do you think needs to happen? Is there a new trial? No, I don't believe there needs to be a new trial. Because, again, what we should look at is whether or not this issue was taken from the jury and whether or not there was prejudice in it. And because there was no prejudice, because there are tasks that the city admits are compensable that occur after this exchange, there is no error here. And so nothing has to happen with respect to that. And the city had ample opportunity during the trial to ask these EMTs very specific questions geared towards the number of minutes that each item of the exchange takes. I mean, they'd already left in their summary. They'd lost on that, right? Because the judge was going to say, as a matter of law, these tasks were not de minimis, right? I mean, that's what the instruction. All Judge Broderick did in his summary judgment brief is say that the issue of the de minimis defense, frankly, does not stop your claim here. The claim still went before the jury. Questions were asked of every single witness, including by both the city and ourselves, as to all of the factors that go into de minimis, the amount of time, whether it happens regularly. But wasn't it saying, I'm telling you that this is not de minimis, right? I mean, I could have sworn that I read that somewhere, that the- No, Judge Broderick did in a footnote say that the exchange time was not de minimis. But both parties still put that evidence on at trial. And the city- Right, but didn't he also instruct the jury that they could not find that the equipment exchange was de minimis? He did. And again, that instruction is proper. Indeed, the city admits that it was proper to give that instruction with respect to the paramedics. And the only difference between the paramedics and the EMTs are that in addition to the exact same equipment, the keys, the CO meter, the dosimeter, the EPCR tablet, the radio, in addition to those pieces of equipment, they were also exchanging a narcotics pouch with three, I believe six, actually, six vials of narcotics. So the city admits that it was administratively feasible to record the time, and they admit that it occurs regularly. The only thing they're claiming is that there might be a time difference. And the city failed to elicit any evidence as to that at trial. I'm sorry, Counselor. This is actually really hard for us, and I know you have to advocate, but I'm hoping you can hear it with the spirit of trying to help us figure something out. Before trial, it already determined that there were not unresolved factual issues with regard to exchanging equipment, and thus the law of the case compelled my jury. In other words, I determined that there's no genuine issue as to material fact. I find that the time spent on exchanging the equipment or narcotics is not de minimis. I mean, what room? Assuming that we, when we look at those statements, and are of the view that maybe the jury didn't think it was able to consider all of this stuff, and we think that summary judgment was improperly granted, what do we do? And again, and I apologize if I'm being repetitive, but because that is not the last work task of the day, even if the court's summary judgment decision may have been questionable, the city still had and took the opportunity to put that evidence on at trial, and the judge had the opportunity to determine whether or not he should revisit his previous decision. And he found, looking at the evidence elicited at trial, evidence that the city, for the most part, does not dispute, that it is administratively feasible to record this time, that it does happen regularly. Given that, in combination with the continuous workday doctrine, which requires that this time be included if there is compensable work that is done after it, it's unrebutted testimony in the evidence from every single plaintiff, including city plaintiffs, or plaintiffs that the city called, unrebutted testimony that they engaged in additional compensatory work after the equipment exchange. And the city has not argued and isn't arguing before you today that that additional work is de minimis, because it, again, complies with the factors. It happens regularly. It is in the aggregate substantial, and it is administratively feasible to be recorded and is, in fact, already recorded by the city. All right. Thank you. Thank you, Your Honors. Thank you, Your Honors. Just a couple quick points. First, on the point as to whether this issue has already been decided by QBEL, as Judge Nathan held before she joined this court, that this court has never squarely addressed that issue. And she went on to say that it's incontrovertible that if an employer sets up a sufficient working system for employees to receive overtime pay, the employer should not be expected to have knowledge that the employee is not being paid. From 2021, Judge Nathan held that this issue has never been decided by this court before and joined the majority of the circuits, and there's no minority, I'd point out, to hold that. Turning to the question I think Judge Jacobs picked up on the verdict sheet, the verdict sheet was hopelessly confusing. The jury pointed this out, asked exactly the right question, saying, are we supposed to consider whether this is all working time or whether it's just all recorded? And the district court asked them to answer the wrong question, essentially. And on that basis alone, there needs to be a new trial, at least on damages. But the question that the city proposed be asked wasn't really any clearer. The city said, did the plaintiffs prove all pre-shift time in the sliver is time worked? Are you saying that that clarifies it? I think it is clearer. It could perhaps be more clear. It probably should say it's compensable time rather than time worked. But I think regardless of whether our proposal was more correct, even if it could be clearer on remand, we can hopefully... Because it emphasizes that it had to be worked. Right, correct. It has to be compensable working time, as opposed to just time that they were present that is recorded by the city time system. Your answer says that the city admits that there were tasks here that the city concedes were compensable. Are you talking about on the de minimis defense? No, I think just generally. I mean, we don't disagree that there were on some occasions tasks that were compensable. I think the question is... What kinds of things? Well, the pre-shift tasks, if they signed in early and actually started doing work early, went to the ambulance early, started getting logged in and things like that early, if it was possible if the other shift had come off early. There are definitely tasks that did happen, which many plaintiffs claimed and got overtime for that were compensable. Thank you. Can I just ask a question? Of course. It's the same thing I asked your colleague. If we decide that summary judgment was improperly granted on the de minimis issue, what do you believe needs to happen? We contend that there needs to be a new trial on damages if the court finds that summary judgment was improperly granted on the de minimis issue. So a new trial on damages only. And then have you guys gone to camp? We have not. You haven't. Okay. Is that mediation? Mediation, yeah. The mediation program here? Yes, we did. Oh, we did. I apologize. That was maybe before I joined the case. I apologize for that. Okay. So with that, we request the court vacate the judgment, enter judgment in defendant's favor on the pre-shift claims and remand for a new trial on damages and post-shift FLSA liability for the EMTs. All right. Thank you. Thank you to both trial counsel.